IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FLEURY, individually and on behalf of the class members described herein, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 1:22-cv-03862 |
| -vs- | ) ) ) |
| GENERAL MOTORS LLC, | ) ) ) |
| Defendant. | ) |

## COMPLAINT – CLASS ACTION

1. Plaintiff Michael Fleury brings this action against Defendant General Motors LLC ("GM") to secure redress for the conduct of GM in selling and charging for Flex Fuel vehicles, supposedly designed to operate on E85 (85% ethanol) fuel, that cannot be regularly operated on E85 fuel without damage.

2. Defendant GM represents that the vehicles will operate on E85. Defendant does not disclose that the owner must alternately fill the vehicle with E85 and gasoline. Certain warnings relating to lower mileage and incompatibility of E85 with low temperatures are provided, but none regarding consistent use of E85.

3. In fact, internal GM documents state that "excessive use of E85" may "caus[e] a plunger internal to the fuel pump to stick." This, in turn, causes often sudden lack of power and necessitates costly repairs, including replacement of the fuel pump.

4. This issue is not disclosed to consumers, who find out about the problem when it occurs. If the person is operating the vehicle on the highway at the time it occurs, it is a significant safety hazard.

5. Plaintiff alleges violation of the Consumer Fraud Act, common law fraud and breach of express warranty.

1

**PARTIES**

6. Plaintiff Michael Fleury is a resident of Chicago, Illinois.

7. Defendant GM is a limited liability company organized under Delaware law with its principal place of business at 300 Renaissance Center, Detroit, MI 48265. Its registered agent and office in Illinois is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. The sole member and owner of GM is General Motors Holdings, LLC, a Delaware limited liability company with its principal place of business in Michigan. The sole member of General Motors Holdings LLC is General Motors Company, a Delaware corporation with its principal place of business in Michigan.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(d) (Class Action Fairness Act). There are over 100 proposed class members, most of whom are not citizens of Michigan or Delaware. The claims of the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

9. Plaintiff is a citizen of Illinois, diverse from GM, General Motors Holdings LLC and General Motors Company. Most members of the class are residents of Illinois and therefore of diverse citizenship from Defendant.

10. Personal jurisdiction and venue are proper because Defendant GM intentionally markets and sells its products within the state of Illinois.

11. GM seeks to promote the sale of used GM vehicles by GM dealers in Illinois, as well as new vehicles. GM sells parts for used GM vehicles and its dealers service them. The sale of used GM vehicles develops public desire for the purchase of new GM vehicles and helps support the GM dealer network, upon which GM relies for the distribution of new vehicles. The sale of a used GM vehicle often means that a prior owner of the vehicle is in the market for a new GM vehicle.

**FACTS**

12. In October 2019, Plaintiff purchased a used 2016 Chevrolet Impala Flex Fuel vehicle from Advantage Chevrolet, Hodgkins, Cook County, Illinois, an authorized GM dealer.

13. Plaintiff had been interested in purchasing an Impala LTZ for quite some time, and the Flex Fuel feature provided additional incentive to purchase.

14. The value of a Flex Fuel vehicle is greater than that of a comparable vehicle without that feature. The extra value has increased as of late with increased gasoline prices. In mid-2022, E85 sold for about $1.50 to $2 per gallon less than gasoline.

15. The vehicle was manufactured and placed in the stream of commerce by GM.

16. Plaintiff purchased the vehicle for personal, family or household purposes (general transportation) and not business purposes.

17. Defendant GM markets and sells Flex Fuel vehicles throughout the United States, including Illinois.

18. Defendant GM represents to the public that such vehicles can "run on E85 ethanol, gasoline, or any combination of the two." (General Motors Statement on Flex-Fuel Vehicle Pledge) (https://news.gm.com/newsroom.detail.html/Pages/news/us/en/2010/May/0505_ flexfuel.html) (Exhibit A).

19. This is the accepted meaning of "Flex Fuel" to the public.

20. The press release cited above remains on GM's website.

21. Similar statements were regularly made by GM to the public. For example, the annual report on SEC Form 10-K filed by General Motors Company for the year ending December 31, 2017 stated (original page 5) that "We offer a variety of FlexFuel vehicles in the U.S. for the 2018 model year to retail and commercial customers capable of operating on gasoline, E85 ethanol or any combination of the two." The same statement appears in the annual reports for 2018-2021.

22. The quoted statements negate any requirement that E85 and gasoline must be used alternately. Running the vehicle on E85 100% of the time is permissible. Use of E85 90% of the

time and gasoline 10% of the time is "any combination" and permissible.

23. The vehicle purchased by Plaintiff had a corn yellow fuel cap, denoting that it is a Flex Fuel vehicle. (Exhibit B).

24. The vehicle purchased by Plaintiff had an "E85" sticker in one of the windows. (Exhibit C).

25. The vehicle purchased by Plaintiff was advertised as containing an engine which "[i]ncludes E85 FlexFuel capability" online. (Exhibit D, p. 4).

26. The owner's manual for the 2016 Chevy Impala purchased by Plaintiff is published on the Internet by GM. (https://www.chevrolet.com/bypass/pcf/gma-content-api/resources/sites/GMA/content/staging/MANUALS/3000/MA3014/en_US/2.0/2k16impala2ndPrint.pdf)

27. The owner's manual states:

   a. **E85 or FlexFuel** Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See *E85 or FlexFuel* ⇨ 240. For all other vehicles, use only the unleaded gasoline described under *Fuel* ⇨ 238. (Exhibit E).

   b. If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See *E85 or FlexFuel* ⇨ 240. (Exhibit F).

   c. **E85 or FlexFuel** Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in *Fuel* ⇨ 238. (Exhibit G).

   d. **The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations.

4

                    (Exhibit G, emphasis added).

        e.        E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on. (Exhibit G).

        f.        If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* ⇨ 240. (Exhibit H).

28.        The owner's manual contains two warnings relating to Flex Fuel vehicles:

        a.        The starting characteristics of E85 or FlexFuel make it unsuitable for use when temperatures fall below -18 °C (0 °F). Use gasoline or add gasoline to the E85 or FlexFuel. (Exhibit G).

        b.        Because E85 or FlexFuel has less energy per liter (gallon) than gasoline, the vehicle will need to be refilled more often. See *Filling the Tank* ⇨ 241. (Exhibit G).

29.        There is no warning about alternating E85 with gasoline at a frequency of filling up with gasoline every other tank or every third tank to prevent damage.

30.        The presence of two warnings and no others conveys to the consumer the meaning that there are no other limitations or restrictions on the use of E85.

31.        The statement that "The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it" is flatly contrary to the proposition that frequent use of gasoline is necessary.

32.        The quoted statements are typical of those in the owners' manuals of GM Flex Fuel vehicles.

33.        In 2022, after the price of gasoline increased, Plaintiff began using E85 regularly. Plaintiff checked the owner's manual before starting to use Flex Fuel.

34.        About the beginning of April 2022, subsequent to such regular use, while

Plaintiff was making normal use of the vehicle, the check engine light came on, a warning light displayed, and the vehicle lost power, such that it could not be safely driven on public roads.

35. The temperature was well in excess of -18 °C (0 °F).

36. On April 5, 2022, Plaintiff brought the vehicle to an authorized GM dealer, Advantage Chevrolet, where the service department found that the vehicle had "low fuel pressure from high pressure fuel pump," that the "high pressure fuel pump needs to be replaced per bulletin #18-NA-072," and that the problems were related to the use of E85 fuel. (Exhibit I).

37. While he was at Advantage Chevrolet, Service Advisor Owen Suarez came up to Plaintiff and asked him if he was using E85- specifically, if he had mixed it with gasoline. When Plaintiff said that lately he had been suing E85 exclusively, Owen informed him that he should have been alternating fill-ups between E85 and gasoline, and failing to do so caused the problems his vehicle was having. The invoice specifically notes "Concern CUSTOEMR [*sic*] STATES HE IS USING E85".

38. Service Bulletin 18-NA-072 describes a fuel pump problem attributed to "excessive use of E85, causing a plunger internal to the fuel pump to stick." (Exhibit J).

39. The Bulletin states that the fuel tank should be filled with gasoline one-third or one-half of the time. (Exhibit J).

40. The Bulletin is dated March 2020 but replaced similar April 2018 and January 2019 Bulletins. The April 2018 Bulletin is in Exhibit K and the January 2019 Bulletin is in Exhibit L.

41. Service Bulletin 18-NA-072 replaced an earlier Bulletin designated PIP5385 issued in 2018 (Exhibit M) and 2016 (Exhibits N-O). Editions of PIP5385 are denoted by a letter following 5385.

42. Defendant knew of the fuel pump problem caused by "excessive use" of E-85 since no later than early 2016.

43. The ordinary consumer does not consult GM Service Bulletins prior to purchase. The Service Bulletins are numerous, are intended for GM and dealer service personnel, and often

6

state that they are not for do-it-yourselfers.

44. Problems with Flex Fuel vehicles malfunctioning while using E85 fuel have been known by GM since prior to the time the vehicle purchased by Plaintiff (a) was first placed in service or (b) sold to Plaintiff.

45. Plaintiff failed the emissions test on July 9, 2022. (Exhibit P). AutoZone informed Plaintiff he would need a new mass air flow sensor to pass emissions. Upon information and belief, the mass air flow sensor needs to be replaced because of the ongoing failure of the high pressure fuel pump.

46. Initially, Advantage Chevrolet had Plaintiff pay for diagnosis of the problem and asked Plaintiff to pay for repairs.

47. After Plaintiff complained to the Better Business Bureau and called Channel 2 (CBS2 Chicago Investigators), GM offered to "fix" the fuel pump.

48. However, the "fix" would not have relieved Plaintiff of the need to use gasoline every second or third fillup.

49. There is no way in which a GM Flex Fuel vehicle can be operated exclusively on E85 without substantial risk of damage.

50. In short, the GM Flex Fuel vehicles **cannot** be made to conform to the representations concerning Flex Fuel made by GM. GM's statement in the owners manual that "The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it," is an invitation to cause expensive damage to the vehicle in a manner likely to constitute a safety hazard.

51. GM has aggressively promoted the benefits of Flex Fuel since about 2006. (Exhibits Q-R). For more than 15 years, all GM Flex Fuel vehicles have been equipped with yellow, corn-colored filler caps to signify that they take E85 fuel. (Exhibit Q).

52. There is substantial public demand for Flex Fuel vehicles, which are perceived as environmentally friendly. Demand for Flex Fuel vehicles is greater in the Midwest and Illinois, as corn is grown and ethanol produced locally, reducing the cost of ethanol. The four states that

produce the largest amount of ethanol are Iowa, Nebraska, Illinois and Minnesota, in that order.

53. Millions of Flex Fuel vehicles have been sold in the United States by GM. According to statistics maintained by the Secretary of State of Illinois, there are about 1.1 million Flex Fuel vehicles of all makes registered in Illinois. (Exhibit S). GM sells 15-16% of all new vehicles sold in the United States and a higher percentage of Flex Fuel vehicles. This amounts to thousands of GM Flex Fuel new and used vehicles sold per year in Illinois.

54. Plaintiff and every other purchaser of a Flex Fuel vehicle (new or used) received GM's representations that the vehicle purchased was a Flex Fuel vehicle that could be safely and reliably operated on E85 fuel, including the yellow, corn-colored filler cap on the vehicle.

55. On information and belief, GM has used yellow filler caps on all of its Flex Fuel vehicles since 2006.

56. Plaintiff would not have purchased a Flex Fuel vehicle, would not have paid as much for it, or would have purchased another vehicle altogether, had he known of the problem.

57. GM could easily have notified Flex Fuel vehicle owners that they should fill their vehicles with gasoline at periodic intervals. However, doing so would have diminished the public desire for and perceived value of Flex Fuel vehicles. GM intentionally determined not to alert vehicle owners.

## COUNT I – ILLINOIS CONSUMER FRAUD ACT

58. Plaintiff incorporates paragraphs 1-57.

59. It is both unfair and deceptive, in violation of 815 ILCS 505/2, for GM to promote the sale of Flex Fuel vehicles and make the representations concerning such vehicles quoted above, without disclosing the material fact that Flex Fuel vehicles should be filled with gasoline rather than E85 every second or third fillup.

60. These false and misleading statements include:

    a. ***E85 or FlexFuel*** Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See E85 or FlexFuel ⇨240. For all other vehicles, use only the unleaded gasoline

8

          described under *Fuel* ⇨ 238.  (Exhibit E).

    b.    If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See E85 or FlexFuel ⇨ 240.  (Exhibit F).

    c.    ***E85 or FlexFuel***   Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in *Fuel* ⇨ 238.  (Exhibit G).

    d.    ***The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.*** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit G, emphasis added).

    e.    E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on.  (Exhibit G).

    f.    If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* ⇨ 240.  (Exhibit H).

    g.    The presence in the owner's manual of two warnings relating to Flex Fuel vehicles, but nothing about alternating E85 with gasoline at a frequency of filling up with gasoline every other tank or every third tank to prevent damage.

61.    The warnings in the owners manual that E85 should not be used in low temperatures and that E85 provides less mileage than gasoline imply to the average consumer that these are the only systemic problems from regular use of E85.

62. The fact that consistent use of E85 may cause sudden loss of power or severe damage is a material fact to any E85 owner.

## CLASS ALLEGATIONS

63. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R.Civ.P. 23(a) and (b)(3).

64. The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM Flex Fuel vehicle, new or used, (c) on or after a date 3 years prior to the filing of this action.

65. Excluded from the class are Defendant; any affiliate, parent, or subsidiary of Defendant; any GM dealer; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

66. The class is so numerous that joinder of all members is not practicable.

67. There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

    a. Whether the Flex Fuel vehicles cannot consistently use E85 fuel.

    b. Whether GM engaged in unfair or deceptive practices by failing to disclose the need to alternate use of gasoline and E85 fuel.

68. Plaintiff will fairly and adequately represent the class. There is no conflict of interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously.

69. Plaintiff's claims are typical of those of the proposed class and have the same legal and factual basis as the claims of the class members.

70. A class action is a superior means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against GM for the following relief:

    i.    Actual damages;

    ii.    Punitive damages;

    iii.    Attorney's fees, litigation expenses and costs;

    iv.    Such other or further relief as the Court deems proper.

## COUNT II – FRAUD

71. Plaintiff incorporates paragraphs 1-57.

72. Defendant GM committed fraud when it made statements concerning the use of E85 in its vehicles which are either (a) outright false or (b) literally true but are seriously misleading because they do not state matters which materially qualify the statements made.

73. These false and misleading statements include:

    a.    ***E85 or FlexFuel*** Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See E85 or FlexFuel ⇨ 240. For all other vehicles, use only the unleaded gasoline described under *Fuel* ⇨ 238. (Exhibit E).

    b.    If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See E85 or FlexFuel ⇨ 240. (Exhibit F).

    c.    ***E85 or FlexFuel*** Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in *Fuel* ⇨ 238. (Exhibit

11

        G).

d. **The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit G, emphasis added).

e. E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on. (Exhibit G).

f. If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* ⇨240. (Exhibit H).

g. The presence in the owner's manual of two warnings relating to Flex Fuel vehicles, but nothing about alternating E85 with gasoline at a frequency of filling up with gasoline every other tank or every third tank to prevent damage.

74. GM made these statements for the purpose of encouraging (a) the purchase of Flex Fuel vehicles and (b) maximum use of E85 fuel in those vehicles.

75. GM knew, since prior to the time the vehicle purchased by Plaintiff (a) was first sold at retail or (b) sold to Plaintiff, that its Flex Fuel vehicles needed to be filled with gasoline every second or third fillup to avoid damage.

76. In purchasing his vehicle, Plaintiff relied on the ability of the vehicle to use E85, without limitation.

77. Other purchasers of GM Flex Fuel vehicles also relied on the ability of the vehicle to use E85, without limitation.

78. The problem with "excessive use" of E85 is a material fact.

79. No one would pay thousands of dollars for a vehicle and then regularly fill it with a distinctive type of fuel if they knew that doing so would cause damage.

## **CLASS ALLEGATIONS**

80. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R.Civ.P. 23(a) and (b)(3).

81. The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM Flex Fuel vehicle, new or used, (c) on or after a date 5 years prior to the filing of this action.

82. Excluded from the class are Defendant; any affiliate, parent, or subsidiary of Defendant; any GM dealer; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

83. The class is so numerous that joinder of all members is not practicable.

84. There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

   a. Whether the Flex Fuel vehicles cannot consistently use E85 fuel.

   b. Whether GM engaged in fraud by making the representations described above, while failing to disclose the need to alternate use of gasoline and E85 fuel.

85. Plaintiff will fairly and adequately represent the class. There is no conflict of interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously.

86. Plaintiff's claims are typical of those of the proposed class and have the same legal

and factual basis as the claims of the class members.

87. A class action is a superior means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against GM for the following relief:

      i. Actual damages;

      ii. Punitive damages;

      iii. Costs;

      iv. Such other or further relief as the Court deems proper.

## COUNT III – BREACH OF EXPRESS WARRANTY

88. Plaintiff incorporates paragraphs 1-57.

89. The following statements, made directly to each purchaser of a new or used GM Flex Fuel vehicle, created an express warranty, within 810 ILCS 5/2-313, that GM Flex Fuel vehicles could be regularly operated with E85 fuel:

    a. ***E85 or FlexFuel*** Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See E85 or FlexFuel ⇨ 240. For all other vehicles, use only the unleaded gasoline described under *Fuel* ⇨238. (Exhibit E).

    b. If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See E85 or FlexFuel ⇨ 240. (Exhibit F).

    c. ***E85 or FlexFuel*** Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in *Fuel* ⇨238. (Exhibit

G).

d. **The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit G, emphasis added).

e. E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on. (Exhibit G).

f. If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. *See E85 or FlexFuel* ⇨ 240. (Exhibit H).

g. The presence in the owner's manual of two warnings relating to Flex Fuel vehicles, but nothing about alternating E85 with gasoline at a frequency of filling up with gasoline every other tank or every third tank to prevent damage.

90. The representations form part of the basis of the bargain.

91. GM breached the warranty because its Flex Fuel vehicles cannot be regularly operated on E85.

92. GM knew of the problem with "excessive use of E85" since prior to Plaintiff's purchase of his vehicle.

93. Each consumer who brought his vehicle to a GM dealer for correction of the problems resulting from "excessive use of E85" notified GM of the problem. "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's

rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." (Comment 4, 810 ILCS 5/2-607).

## CLASS ALLEGATIONS

94. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class.

95. The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM Flex Fuel vehicle, new or used, (c) on or after a date 4 years prior to the filing of this action.

96. Excluded from the class are Defendant; any affiliate, parent, or subsidiary of Defendant; any GM dealer; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

97. The class is so numerous that joinder of all members is not practicable.

98. There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

    a. Whether the affected vehicles cannot consistently use E85 fuel.

    b. Whether GM violated express warranties.

99. Plaintiff will fairly and adequately represent the class. There is no conflict of interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously.

100. Plaintiff's claims are typical of those of the proposed class. Plaintiff's claims have the same legal and factual basis as the claims of the class members.

101. This class action is superior to other available means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members for the following relief:

    i. Actual damages;

    ii. Costs; and

    iii. Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Carly M. Roman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

17

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Carly M. Roman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\38883\Complaint (revised 7.25.22)_.wpd