IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FLEURY,<br>individually and on behalf of the class<br>members described herein,<br><br>    Plaintiff,<br><br>    -vs-<br><br>GENERAL MOTORS LLC,<br>and AMERICAN CHEVROLET, INC.,<br>d/b/a ADVANTAGE CHEVROLET,<br>and ADVANTAGE CHEVROLET<br>OF HODGKINS,<br><br>    Defendants. | 1:22cv03862<br>Judge Kendall |

## AMENDED COMPLAINT – CLASS ACTION

1.    Plaintiff Michael Fleury brings this action against Defendants General Motors LLC ("GM") and American Chevrolet, Inc., d/b/a Advantage Chevrolet and Advantage Chevrolet of Hodgkins ("Advantage Chevrolet") to secure redress for the conduct of Defendants in selling and charging for Flex Fuel vehicles, supposedly designed to operate on E85 (85% ethanol) fuel, that cannot be regularly operated on E85 fuel without damage.

2.    Defendants represent that the vehicles will operate on E85. Defendants do not disclose the known, material fact that the owner must alternately fill the vehicle with E85 and gasoline to avoid damage. Certain warnings relating to lower mileage and incompatibility of E85 with low temperatures are provided, but none regarding repeated use of E85.

3.    In fact, internal GM documents, dating back prior to the manufacture of Plaintiff's vehicle, state that "excessive use of E85" may "caus[e] a plunger internal to the fuel pump to stick." This, in turn, causes often sudden lack of power and necessitates costly repairs, including replacement of the fuel pump.

4.    These internal documents were provided to and known to Advantage Chevrolet upon issuance.

1

5.      This issue is not disclosed to consumers, who find out about the problem when it occurs.  If the person is operating the vehicle on the highway at the time it occurs, it is a significant safety hazard.

6.      Plaintiff alleges violation of the Consumer Fraud Act, common law fraud and breach of express and implied warranties.

**PARTIES**

7.      Plaintiff Michael Fleury is a resident of Chicago, Illinois.

8.      Defendant GM is a limited liability company organized under Delaware law with its principal place of business at 300 Renaissance Center, Detroit, MI 48265.  Its registered agent and office in Illinois is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield , IL 62703.  The sole member and owner of GM is General Motors Holdings, LLC, a Delaware limited liability company with its principal place of business in Michigan. The sole member of General Motors Holdings LLC is General Motors Company, a Delaware corporation with its principal place of business in Michigan.

9.      Defendant Advantage Chevrolet is a Delaware corporation which operates a new and used car dealership at its principal place of business at 9510 Joliet Rd., Hodgkins, IL 60525-4137.

**JURISDICTION AND VENUE**

10.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(d) (Class Action Fairness Act). There are over 100 proposed class members, most of whom are not citizens of Michigan or Delaware.  The claims of the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

11.      Plaintiff is a citizen of Illinois, diverse from GM, General Motors Holdings LLC and General Motors Company. Most members of the class are of diverse citizenship from Defendant.

12.      Personal jurisdiction and venue are proper because Defendant GM intentionally markets and sells its products within the state of Illinois.

2

13.     GM seeks to promote the sale of used GM vehicles by GM dealers in Illinois, as well as new vehicles.  GM sells parts for used GM vehicles and its dealers service them.  The sale of used GM vehicles develops public desire for the purchase of new GM vehicles and helps support the GM dealer network, upon which GM relies for the distribution of new vehicles.   The sale of a used GM vehicle often means that a prior owner of the vehicle is in the market for a new GM vehicle.

## FACTS

### Plaintiff's purchase of Flex Fuel vehicle

14.     In October  2019, Plaintiff purchased a used 2016 Chevrolet Impala Flex Fuel vehicle from Advantage Chevrolet, an authorized GM dealer.

15.     Plaintiff had been interested in purchasing an Impala LTZ for quite some time, and the Flex Fuel feature provided additional incentive to purchase.

16.     The value of a Flex Fuel vehicle is greater than that of a comparable vehicle without that feature.  The extra value has increased as of late with increased gasoline prices.  In mid-2022, E85 sold for about $1.50 to $2 per gallon less than gasoline

17.     The vehicle was manufactured and placed in the stream of commerce by GM.

18.     Plaintiff purchased the vehicle for personal, family or household purposes (general transportation) and not business purposes.

19.     Defendant GM  markets and sells Flex Fuel vehicles throughout the United States, including Illinois.

20.     Plaintiff was interested in the Flex Fuel feature and selected this Impala over a comparable one that did not have the Flex Fuel feature.

### Defendants' representations concerning meaning of "Flex Fuel"

21.     Prior to purchase Plaintiff received GM and Advantage Chevrolet representations concerning the Flex Fuel feature.

22.     The vehicle purchased by Plaintiff had a prominent "E85" sticker in the window

3

immediately above the fuel filler. (Exhibit A)  Plaintiff saw the sticker and relied on it in purchasing the vehicle.  The fuel filler cap itself was corn yellow, which GM uses to denote a Flex Fuel vehicle. (Exhibit B)

23.     The vehicle purchased by Plaintiff was advertised by Advantage Chevrolet as containing an engine which "[i]ncludes E85 FlexFuel capability" online.  (Exhibit C, p. 4) Plaintiff saw and relied upon the advertisement.

24.     Although the advertisement was placed by Advantage Chevrolet, the specifications advertised came from GM.

25.     GM has gone to great effort to create public understanding and secondary meaning as to what "Flex Fuel" means.

26.     For many years, Defendant GM had represented to the public that Flex Fuel vehicles can "run on E85 ethanol, gasoline, or any combination of the two." (General Motors Statement on Flex-Fuel Vehicle Pledge)  (https://news.gm.com/newsroom.detail.html/Pages/news/us/en/2010 /May/0505_ flexfuel.html) (Exhibit D).

27.     This press release remains on GM's website.

28.     This is the accepted meaning of "Flex Fuel" to the public, intended by GM,  and is conveyed by the statement that a vehicle is a "Flex Fuel" vehicle.

29.     Similar statements were regularly made by GM to the public in other ways.  For example, the annual report on SEC Form 10-K filed by General Motors Company for the year ending December 31, 2017 stated (original page 5) that "We offer a variety of FlexFuel vehicles in the U.S. for the 2018 model year to retail and commercial customers capable of operating on gasoline, E85 ethanol or any combination of the two."  The same statement appears in the annual reports for 2018-2021.

30.     The quoted statements negate any requirement that E85 and gasoline must be used alternately.  Running the vehicle on E85 100% of the time is permissible.  Use of E85 90% of the time and gasoline 10% of the time is "any combination" and permissible.

4

## Provision of owners manual

31.     Plaintiff was provided with a hard copy of the GM owners manual pertaining to the vehicle at the time of purchase by Advantage Chevrolet.

32.     The owner's manual for the 2016 Chevy Impala purchased by Plaintiff is published on the Internet by GM as well.  (https://www.chevrolet.com/bypass/pcf/gma-content-api/resources/sites/GMA/content/staging/MANUALS/3000/MA3014/en_US/2.0/2k16impala2ndPrint.pdf)

33.     The owners manual is a direct communication by GM to both new and used vehicle purchasers.   It is intended to be, and is, relied upon by the ultimate consumer such as Plaintiff.   It is not intended for use by GM dealers, who receive different types of product information from GM.

34.     GM intended, and Plaintiff understood, that the manual contained the specifications of the vehicle, instructions for its proper maintenance and use, and all appropriate warnings and limitations relating to the particular make and model of vehicle, as opposed to cars generally. Plaintiff understood and relied upon the proposition that following the instructions in the manual would not cause or increase the risk of harm.

35.     The affirmations and descriptions in the owners manual prepared by GM are part of what is being sold and became part of the basis of the bargain with respect to both GM and Advantage Chevrolet.

36.     Plaintiff read the owner's manual whenever he had a question about the vehicle's features, operation or care.

## Representations about Flex Fuel in owners manual

37.     The owner's manual states:

   a.        **E85 or FlexFuel**   Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See *E85 or FlexFuel* => 239. For all other vehicles, use only the unleaded gasoline described under *Fuel* => 238.  (Exhibit E).

5

b.     If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See *E85 or FlexFuel* => 240. (Exhibit F).

c.     **E85 or FlexFuel**    Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in *Fuel* =>238. (Exhibit G).

d.     ***The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.*** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit G, emphasis added).

e.     E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/ CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%.  Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on.  (Exhibit H).

f.     If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* => 240.  (Exhibit H).

38.     The owner's manual contains only two warnings relating to Flex Fuel vehicles:

a.     The starting characteristics of E85 or FlexFuel make it unsuitable for use when temperatures fall below -18 °C (0 °F). Use gasoline or add gasoline to the E85 or FlexFuel.  (Exhibit G).

b.     Because E85 or FlexFuel has less energy per liter (gallon) than gasoline, the vehicle will need to be refilled more often. See *Filling the Tank* => 240. (Exhibit G).

39.     There is no warning about alternating E85 with gasoline at a frequency of filling up

with gasoline every other tank or every third tank to prevent damage.

40. The presence of two warnings and no others conveys to the consumer the meaning that there are no other limitations or restrictions on the use of E85.

41. The statement in the owners manual that "The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it" conveys the meaning that the owner of a Flex Fuel vehicle can use it to the maximum extent available, and is flatly contrary to the proposition that frequent use of gasoline is necessary to avoid damage.

42. The quoted statements are typical of those in the owners' manuals of GM Flex Fuel vehicles.

43. GM has also stated to the public that "Initiatives to expand the infrastructure for flex-fuel vehicles are extremely important . . . and that the additional pumps need to be put where the vehicles are located. While the largest concentrations of flex-fuel vehicles are found in the highest-population areas, two thirds of the current E85 stations, are in 10 Midwestern states. Ninety percent of registered flex-fuel vehicles don't have an E85 station in their zip code, and nearly 50%, don't have E85 in their county, Stephens said. The US will need about 10,000 more pumps to put ethanol fuel within 2 miles of customers." (Exhibit I, see also Exhibit J) This conveys the meaning to the public that E85 is preferred when it is available.

44. That E85 may be used continuously is also the meaning conveyed by GM directing the consumer (Exhibit G) to official maps showing where fuel stations dispensing E85 are located. (Exhibit K) This enables and encourages vehicle owners driving long distances to select a route that enables them to use E85 and not use gasoline. If GM Flex Fuel vehicles could not be so used, GM should have informed the public.

### Harm to Plaintiff

45. In 2022, after the price of gasoline increased, Plaintiff began using E85 regularly.

46. Prior to using E85 regularly, Plaintiff consulted the owners manual to see if there were any warnings or prohibitions about his intended use of E85.

7

47. Plaintiff had used E85 on several occasions before, without any consequences other than the lower mileage stated in the manual.

48. About the beginning of April 2022, subsequent to such regular use, while Plaintiff was making normal use of the vehicle, the check engine light came on, a warning light displayed, and the vehicle lost power, such that it could not be safely driven on public roads.

49. The temperature was well in excess of -18 °C (0 °F).

50. On April 5, 2022, Plaintiff brought the vehicle to Advantage Chevrolet, where the service department found that the vehicle had "low fuel pressure from high pressure fuel pump," that the "high pressure fuel pump needs to be replaced per bulletin #18-NA-072," and that the problems were related to the use of E85 fuel. (Exhibit L).

51. While he was at Advantage Chevrolet, Service Advisor Owen Suarez came up to Plaintiff and asked him if he was using E85 – specifically, whether he had mixed it with gasoline. When Plaintiff stated that he had lately been using E85 exclusively, Owen informed him that he should have been alternating fillups between E85 and gasoline, and that failing to do so caused the problems his vehicle was having.

52. The Advantage Chevrolet invoice specifically notes "Concern CUSTOEMR [sic] STATES HE IS USING E85."

### Defendants' knowledge of Flex Fuel hazard

53. Service Bulletin 18-NA-072 describes a fuel pump problem attributed to "excessive use of E85, causing a plunger internal to the fuel pump to stick." (Exhibit M).

54. The Bulletin states that the fuel tank should be filled with gasoline one-third or one-half of the time. (Exhibit M).

55. The Bulletin is dated March 2020 but replaced similar April 2018 and January 2019 Bulletins. The April 2018 Bulletin is in Exhibit N and the January 2019 Bulletin is in Exhibit O.

56. Service Bulletin 18-NA-072 replaced an earlier Bulletin designated PIP5385 issued in 2018 (Exhibit P) and 2016 (Exhibits Q-R). Editions of PIP5385 are denoted by a letter following

5385.

57.    Defendant GM knew of the fuel pump problem caused by "excessive use" of E-85 since no later than early 2016.  Defendant Advantage Chevrolet received the service bulletins when they were issued.

58.    The ordinary consumer does not consult GM Service Bulletins prior to purchase. The Service Bulletins are numerous, are intended for GM and dealer service personnel, and often state that they are not for do-it-yourselfers.

59.    Problems with Flex Fuel vehicles malfunctioning while using E85 fuel have been known by GM and Advantage Chevrolet since prior to the time the vehicle purchased by Plaintiff (a) was first placed in service or (b) sold to Plaintiff.

## Damage

60.    Plaintiff failed the Illinois emissions test on July 9, 2022.  (Exhibit S)

61.    AutoZone informed Plaintiff that he would need a new mass air flow sensor to pass.

62.    On information and belief the mass air flow sensor needs to be replaced because of the ongoing failure of the high pressure fuel pump.

63.    Initially, Advantage Chevrolet had Plaintiff pay for diagnosis of the problem and asked Plaintiff to pay for repairs.

64.    After Plaintiff complained to the Better Business Bureau, GM offered to "fix" the fuel pump.

65.    However, the "fix" would not have relieved Plaintiff of the need to use gasoline every second or third fillup.

66.    There is no way in which a GM Flex Fuel vehicle can be operated exclusively on E85 without substantial risk of damage.

67.    In short, the GM Flex Fuel vehicles *cannot* be made to conform to the representations concerning Flex Fuel made by GM and Advantage Chevrolet.  GM's statement in the owners manual that "The use of E85 or FlexFuel is encouraged when the vehicle is designed to

use it," is an invitation to cause expensive damage to the vehicle in a manner likely to constitute a safety hazard.

68.     GM has aggressively promoted the benefits of Flex Fuel since about 2006. (Exhibits D, T-U).  For more than 15 years, all GM Flex Fuel vehicles have been equipped with yellow, corn-colored filler caps to signify that they take E85 fuel.  (Exhibit T)

69.     There is substantial public demand for Flex Fuel vehicles, which are perceived as environmentally friendly.  Demand for Flex Fuel vehicles is greater in the Midwest and Illinois, as corn is grown and ethanol produced locally, reducing the cost of ethanol.  The four states that produce the largest amount of ethanol are Iowa, Nebraska, Illinois and Minnesota, in that order.

70.     Millions of Flex Fuel vehicles have been sold in the United States by GM. According to statistics maintained by the Secretary of State of Illinois, there are about 1.1 million Flex Fuel vehicles of all makes registered in Illinois. (Exhibit V).  GM sells 15-16% of all new vehicles sold in the United States and a higher percentage of Flex Fuel vehicles.  This amounts to thousands of GM Flex Fuel new and used vehicles sold per year in Illinois.

71.     Plaintiff and every other purchaser of a Flex Fuel vehicle (new or used) received GM's representations that the vehicle purchased was a Flex Fuel vehicle that could be safely and reliably operated on E85 fuel, including the yellow, corn-colored filler cap on the vehicle.

72.     On information and belief, GM has used yellow filler caps on all of its Flex Fuel vehicles since 2006.

73.     Plaintiff would not have purchased a Flex Fuel vehicle, would not have paid as much for it, or would have purchased another vehicle altogether, had he known of the problem.

74.     GM could readily have notified Flex Fuel vehicle owners that they should fill their vehicles with gasoline at periodic intervals.  However, doing so would have diminished the public desire for and perceived value of Flex Fuel vehicles.  GM intentionally determined not to alert vehicle owners.

75.     Under the Corporate Average Fuel Economy (CAFÉ) requirements, GM receives a

fuel economy credit for every Flex Fuel vehicle sold. Actual fuel usage is not monitored.

## COUNT I – ILLINOIS CONSUMER FRAUD ACT

76. Plaintiff incorporates paragraphs 1-75.

77. This claim is against both Defendants.

78. It is both unfair and deceptive, in violation of 815 ILCS 505/2, for GM and Advantage Chevrolet to promote the sale of Flex Fuel vehicles and make the representations concerning such vehicles quoted above, without disclosing the material fact that Flex Fuel vehicles should be filled with gasoline rather than E85 every second or third fillup.

### Deceptive practices

79. The fact that continuous use of E85 may cause sudden loss of power or severe damage is a material fact to any owner or prospective owner of a Flex Fuel vehicle, which Defendants was obligated to disclose. *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 759 N.E.2d 66, 70 (1st Dist. 2001).

80. The owners would have either not purchased Flex Fuel vehicles, paid less for them, or alternately used gasoline and E85.

81. Defendants failed to disclose this material fact to induce reliance, i.e., because disclosure would have reduced sales of GM Flex Fuel vehicles.

82. Defendants' affirmative false and misleading statements include:

    a.    **E85 or FlexFuel** Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See *E85 or FlexFuel* =>239. For all other vehicles, use only the unleaded gasoline described under *Fuel* =>238. (Exhibit B).

    b.    If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See *E85 or FlexFuel* =>240. (Exhibit C).

    c.    **E85 or FlexFuel** Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles

11

should use only the unleaded gasoline as described in *Fuel* =>238.  (Exhibit D).

d.   ***The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.*** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit D, emphasis added).

e.   E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/ CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on.  (Exhibit D).

f.   If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* =>240.  (Exhibit E).

g.   The presence in the owner's manual of two warnings relating to Flex Fuel vehicles, but nothing about alternating E85 with gasoline at a frequency of filling up with gasoline every other tank or every third tank to prevent damage.

83.   The warnings in the owners manual that E85 should not be used in low temperatures and that E85 provides less mileage than gasoline imply to the average consumer that these are the only systemic problems from regular use of E85.

**Unfair practice**

84.   Apart from nondisclosure and misrepresentations, the sudden failure of Flex Fuel vehicles presents a safety hazard to both the persons in the vehicle and other vehicles in the immediate vicinity at the time of failure.

85.   It is an unfair practice for Defendants to put vehicles on the road that are known to

12

present a serious potential for sudden failure when operated in complete accordance with the owners manual and other representations by Defendants.

86.     The marketing of vehicles containing an undisclosed safety hazard is contrary to public policy.

87.     Consumers who are not told that they must use gasoline every second or third fillup cannot avoid the hazard.

88.     The sale of Flex Fuel vehicles without warnings in order to further Defendants' profits and CAFÉ numbers is unscrupulous and unethical.

## CLASS ALLEGATIONS

89.     Plaintiff brings this claim on behalf of a class and subclass, pursuant to Fed. R.Civ.P. 23(a) and (b)(3).

90.     The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM Flex Fuel vehicle, new or used, (c) on or after a date 3 years prior to the filing of this action. The subclass consists of class members that purchased from Advantage Chevrolet.

91.     Excluded from the class are Defendants; any affiliate, parent, or subsidiary of Defendants; any GM dealer; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

92.     The class and subclass each have over 40 members and are so numerous that joinder of all members is not practicable.

93.     There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

      a.     Whether the Flex Fuel vehicles cannot continuously use E85 fuel.

13

     b.     Whether Defendants engaged in deceptive practices by failing to disclose the need to alternate use of gasoline and E85 fuel.

     c.     Whether the sale of Flex Fuel vehicles without adequate warning of a safety hazard is unfair.

94.    Plaintiff will fairly and adequately represent the class. There is no conflict of interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously.

95.    Plaintiff's claims are typical of those of the proposed class and have the same legal and factual basis as the claims of the class members.

96.    A class action is a superior means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members and against Defendants for the following relief:

     i.     Actual damages;

     ii.     Punitive damages;

     iii.     Attorney's fees, litigation expenses and costs;

     iv.     Such other or further relief as the Court deems proper.

## COUNT II – FRAUD

97.    Plaintiff incorporates paragraphs 1-75.

98.    This claim is against both Defendants.

99.    Defendant GM committed fraud when it made statements concerning the use of E85 in its vehicles which are either (a) outright false or (b) literally true but are seriously misleading because they do not state matters which materially qualify the statements made.

14

100. Defendant Advantage Chevrolet repeated or passed on the same statements.

101. Defendants' false and misleading statements include:

    a.     **E85 or FlexFuel**   Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See *E85 or FlexFuel* =>239. For all other vehicles, use only the unleaded gasoline described under *Fuel* =>238. (Exhibit B).

    b.     If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See *E85 or FlexFuel* =>240. (Exhibit C).

    c.     **E85 or FlexFuel**   Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in *Fuel* =>238. (Exhibit D).

    d.     ***The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.*** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit D, emphasis added).

    e.     E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/ CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on. (Exhibit D).

    f.     If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* 240. (Exhibit E).

    g.     The presence in the owner's manual of two warnings relating to Flex Fuel vehicles, but nothing about alternating E85 with gasoline at a frequency of

15

filling up with gasoline every other tank or every third tank to prevent

damage.

102.    Defendants made these statements for the purpose of encouraging (a) the purchase

of Flex Fuel vehicles and (b) maximum use of E85 fuel in those vehicles.

103.    Defendants also committed fraud by failure to disclose.

104.    Defendants both knew, since prior to the time the vehicle purchased by Plaintiff (a)

was first sold at retail or (b) sold to Plaintiff, that GM Flex Fuel vehicles needed to be filled with

gasoline every second or third fillup to avoid damage.

105.    Defendants also knew that neither Plaintiff nor other purchasers could reasonably

discover that fact.

106.    Defendants were therefore under a duty to disclose that fact. Their failure to do so

constituted fraud.

107.    In purchasing his vehicle, Plaintiff relied on the ability of the vehicle to use E85,

without limitation.

108.    Other purchasers of GM Flex Fuel vehicles also relied on the ability of the vehicle to

use E85, without limitation.

109.    The problem with "excessive use" of E85 is a material fact. The economic and

environmental benefit of E85 depends on using it as much as possible. No one would pay

thousands of dollars for a vehicle and then regularly fill it with a distinctive type of fuel if they knew

that doing so would cause damage.

## CLASS ALLEGATIONS

110.    Plaintiff brings this claim on behalf of a class and subclass, pursuant to Fed. R.Civ.P.

23(a) and (b)(3).

111.    The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM

Flex Fuel vehicle, new or used, (c) on or after a date 5 years prior to the filing of this action. The

subclass consists of class members who purchased from Advantage Chevrolet.

16

112.    Excluded from the class are Defendants; any affiliate, parent, or subsidiary of Defendants; any GM dealer; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

113.    The class and subclass each have over 40 members and are so numerous that joinder of all members is not practicable.

114.    There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

      a.      Whether the Flex Fuel vehicles cannot continuously use E85 fuel.

      b.      Whether Defendants engaged in fraud by making the representations described above, while failing to disclose the need to alternate use of gasoline and E85 fuel.

115.    Plaintiff will fairly and adequately represent the class. There is no conflict of interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously.

116.    Plaintiff's claims are typical of those of the proposed class and have the same legal and factual basis as the claims of the class members.

117.    A class action is a superior means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

subclass members and against Defendants for the following relief:

       i.      Actual damages;

       ii.     Punitive damages;

       iii.    Costs;

       iv.   Such other or further relief as the Court deems proper.

## COUNT III – BREACH OF EXPRESS WARRANTY

118.    Plaintiff incorporates paragraphs 1-75.

119.    This claim is against both Defendants.

120.    The following statements, made directly to each purchaser of a new or used GM Flex Fuel vehicle, created an express warranty, within 810 ILCS 5/2-313, that GM Flex Fuel vehicles could be regularly operated with E85 fuel:

    a.    **E85 or FlexFuel**   Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). See E85 or FlexFuel =>239. For all other vehicles, use only the unleaded gasoline described under Fuel =>238.  (Exhibit B).

    b.    If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle. See E85 or FlexFuel =>240.  (Exhibit C).

    c.    **E85 or FlexFuel**   Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only the unleaded gasoline as described in Fuel =>238.  (Exhibit D).

    d.    ***The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.*** E85 or FlexFuel is made from renewable sources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website. See www.afdc.energy.gov/afdc/locator/stations. (Exhibit D, emphasis added).

18

e.   E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/ CGSB–3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on.  (Exhibit D).

f.   If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used. See *E85 or FlexFuel* =>240.  (Exhibit E).

g.   The presence in the owner's manual of two warnings relating to Flex Fuel vehicles, but nothing about alternating E85 with gasoline at a frequency of filling up with gasoline every other tank or every third tank to prevent damage.

121.   The representations form part of the basis of the bargain.

122.   All vehicle purchasers understand that vehicle manufacturers issue manuals containing whatever instructions are necessary for the safe and reliable operation of their vehicles. Such manuals are part of the basis of the bargain.

123.   Defendants breached the warranty because GM Flex Fuel vehicles cannot be regularly operated on E85.

124.   Defendants knew of the problem with "excessive use of E85" since prior to Plaintiff's purchase of his vehicle.

125.   Each consumer who brought his vehicle to a GM dealer such as Advantage Chevrolet for correction of the problems resulting from "excessive use of E85" notified both GM and the dealer of the problem.  "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the

19

notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." (Comment 4, 810 ILCS 5/2-607).

## CLASS ALLEGATIONS

126. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class and subclass.

127. The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM Flex Fuel vehicle, new or used, (c) that was delivered to such person on or after a date 4 years prior to the filing of this action. The subclass consists of class members who purchased from Advantage Chevrolet.

128. Excluded from the class are Defendants; any affiliate, parent, or subsidiary of Defendants; any GM dealer; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

129. The class and subclass each have more than 40 members and are so numerous that joinder of all members is not practicable.

130. There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

      a. Whether the affected vehicles cannot continuously use E85 fuel.

      b. Whether Defendants violated express warranties.

131. Plaintiff will fairly and adequately represent the class. There is no conflict of interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and

experienced in class action litigation, and intends to prosecute this action vigorously.

132.    Plaintiff's claims are typical of those of the proposed class.  Plaintiff's claims have the same legal and factual basis as the claims of the class members.

133.    This class action is superior to other available means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical.  Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members for the following relief:

        i.      Actual damages;

        ii.     Costs; and

        iii.    Such other or further relief as the Court deems proper.

## COUNT IV – BREACH OF IMPLIED WARRANTY – UNIFORM COMMERCIAL CODE AND MAGNUSON MOSS CONSUMER PRODUCT WARRANTY ACT

134.    Plaintiff incorporates paragraphs 1-75.

135.    This claim is against Advantage Chevrolet.

136.    Defendant impliedly warranted that the vehicles sold to Plaintiff and other purchasers of a new or used GM Flex Fuel vehicle were merchantable.  Under 810 ILCS 5/2-314, this requires that they "pass without objection in the trade under the contract description," "are fit for the ordinary purposes for which such goods are used"; and "conform to the promises or affirmations of fact made on the container or label if any."

137.    The implied warranty is incorporated in the Magnuson Moss Consumer Products Warranty Act, 15 U.S.C. §2310(d), which provides a federal remedy for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under a . . . implied warranty . . . ."

138. Defendant breached the warranty because GM Flex Fuel vehicles cannot be regularly operated on E85.

139. Defendant knew of the problem with "excessive use of E85" since prior to Plaintiff's purchase of his vehicle.

140. Each consumer who brought his vehicle to Advantage Chevrolet for correction of the problems resulting from "excessive use of E85" notified the dealer of the problem.

## CLASS ALLEGATIONS

141. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class.

142. The class consists of (a) all persons with Illinois addresses, (b) who purchased a GM Flex Fuel vehicle, new or used, (c) from Advantage Chevrolet (d) that was delivered to such person on or after a date 4 years prior to the filing of this action.

143. Excluded from the class are Defendants; any affiliate, parent, or subsidiary of Defendants; any GM dealer; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel for plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to them, as well as the spouses of such persons.

144. The class has more than 40 members and is so numerous that joinder of all members is not practicable.

145. There are common questions of law and fact with respect to the class, which common questions predominate over questions affecting only individual class members. These common questions include:

   a.    Whether the affected vehicles cannot  continuously use E85 fuel.

   b.    Whether Defendants violated express warranties.

146. Plaintiff will fairly and adequately represent the class.  There is no conflict of

22

interest between the Plaintiff and the class members. Plaintiff has retained counsel competent and experienced in class action litigation, and intends to prosecute this action vigorously.

147.    Plaintiff's claims are typical of those of the proposed class. Plaintiff's claims have the same legal and factual basis as the claims of the class members.

148.    This class action is superior to other available means for the fair and efficient adjudication of this dispute. While the individual injuries suffered by each proposed class member are meaningful, they are sufficiently small that individual actions are not economical. Even if class members could afford individual litigation, there is no reason to burden the courts with multiple actions seeking modest damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members for the following relief:

i.      Actual damages;

ii.     Attorney's fees, litigation expenses and costs (15 U.S.C. §2310); and

iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Carly M. Roman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

23

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

_/s/ Daniel A. Edelman_
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Carly M. Roman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\38883\Pleading\1st Amended Complaint_Pleading.WPD