THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FLEURY, individually and on behalf of a class, | ) ) ) |
| *Plaintiff*, | ) No. 1:22-cv-03862 ) |
| v. | ) Judge Virginia M. Kendall ) |
| GENERAL MOTORS LLC, | ) ) |
| *Defendant*. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Fleury bought a used 2016 Chevrolet Impala Flex Fuel—a car which General Motors LLC (GM) had represented could run on a combination of E85 (85% ethanol) and gasoline. But when Fleury began using E85 exclusively, his car broke down. He filed this lawsuit on July 26, 2022 (Dkt. 1) and an amended complaint on September 20, 2022. (Dkt. 21). Fleury brings a putative class action, alleging a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2, and claims of fraud and breach of express warranty under Illinois law. GM moves to dismiss Fleury's amended complaint for failure to state a claim. (Dkt. 40). For the following reasons, GM's motion to dismiss is granted.

## BACKGROUND

Unless otherwise noted, the following factual allegations are taken from the amended complaint (Dkt. 21) and are assumed true for purposes of the motion to dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Defendant General Motors (GM) is a Delaware limited liability company with its principal place of business in Michigan. (Dkt. 21 ¶ 8).[1]

---

[1] GM's holding company and sole member is also a Delaware limited liability company with its principal place of business in Michigan. (*Id.*) The same is true of the holding company and sole member of GM's holding company. (*Id.*)

1

Plaintiff Michael Fleury, an Illinois resident, brings claims on behalf of over 100 proposed class members exceeding $5,000,000 in the aggregate. (*Id.* at ¶ 10).

In October 2019, Fleury bought a used 2016 Chevrolet Impala Flex Fuel from Advantage Chevrolet, an authorized GM dealer in Hodgkins, Illinois. (*Id.* at ¶¶ 7, 9, 14). The car he bought was first in service on June 3, 2016. (Dkt. 21-12). The Flex Fuel feature—allowing the car to operate on E85 (85% ethanol) fuel in addition to gasoline—incentivized Fleury to buy the 2016 Impala. (Dkt. 21 ¶¶ 1–2, 15, 20).[2] Before Fleury bought the Impala, he saw "a prominent 'E85' sticker in the window immediately above the fuel filler," and he allegedly "relied on [the sticker] in purchasing the vehicle." (*Id.* at ¶ 22; Dkt. 21-1). The car's fuel filler cap "was corn yellow, which GM uses to denote a Flex Fuel vehicle." (Dkt. 21 ¶ 22; Dkt. 21-2).[3] Advantage Chevrolet had advertised online that the 2016 Impala's engine "[i]ncludes E85 FlexFuel capability"—an advertisement that Fleury "saw and relied upon." (Dkt. 21 ¶ 23; Dkt. 21-3 at 4). The specifications in Advantage Chevrolet's advertisement "came from GM." (Dkt. 21 ¶ 24).

In addition to the representations Fleury alleges he relied on in buying his 2016 Impala, GM had "create[d] public understanding and secondary meaning as to what 'Flex Fuel' means." (*Id.* at ¶ 25). Specifically, GM represented to the public for many years that Flex Fuel vehicles "run on E85 ethanol, gasoline, or any combination of the two." (*Id.* at ¶ 26; Dkt. 21-4). GM made similar statements in its annual report on SEC Form 10-K for the year 2017: "We offer a variety of FlexFuel vehicles in the U.S. for the 2018 model year to retail and commercial customers capable of operating on gasoline, E85 ethanol or any combination of the two." (Dkt. 21 ¶ 29).

---

[2] As of mid-2022, E85 was $1.50 to $2 less expensive per gallon than gasoline, which would make a Flex Fuel vehicle more valuable than "a comparable vehicle without that feature." (*Id.* at ¶ 16).
[3] Fleury alleges "[o]n information and belief" that "GM has used yellow filler caps on all of its Flex Fuel vehicles since 2006." (Dkt. 21 ¶ 72; Dkt. 21-20).

2

GM's annual reports for 2018-2021 included "[t]he same statement." (*Id.*) Further, GM has "promoted the benefits of Flex Fuel since about 2006." (*Id.* at ¶ 68; Dkts. 21-4; 21-20, 21-21).

When he bought the car, Advantage Chevrolet gave Fleury a copy of the 2016 Impala owner's manual. (Dkt. 21 ¶ 31). Later, Fleury "read the owner's manual whenever he had a question about the vehicle's features, operation or care." (*Id.* ¶ 36). The owner's manual included the following statements:

- "Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). . . . For all other vehicles, use only . . . unleaded gasoline . . . ." (Dkt. 21 ¶ 37a; Dkts. 21-5, 21-7).

- "If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle." (Dkt. 21 ¶ 37b; Dkt. 21-6).

- "The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it. E85 or FlexFuel is made from renewable resources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website." (Dkt. 21 ¶ 37d; Dkt. 21-7).

- "E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/CGSB-3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on." (Dkt. 21 ¶ 37e; Dkt. 21-8).

- "If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used." (Dkt. 21 ¶ 37f; Dkt. 21-8).

- "The starting characteristics of E85 or FlexFuel make it unsuitable for use when temperatures fall below -18 ºC (0 ºF). Use gasoline or add gasoline to the E85 or FlexFuel." (Dkt. 21 ¶ 38a; Dkt. 21-7).
- "Because E85 or FlexFuel has less energy per liter (gallon) than gasoline, the vehicle will need to be refilled more often." (Dkt. 21 ¶ 38b; Dkt. 21-7).

The owner's manual includes "no warning about alternating E85 with gasoline" by "filling up with gasoline every other tank or every third tank to prevent damage." (Dkt. 21 ¶ 39). GM has further stated to the public: "Initiatives to expand the infrastructure for flex-fuel vehicles are extremely important . . . and . . . additional pumps need to be put where the vehicles are located." (Dkt. 21 ¶ 43; Dkts. 21-9, 21-10).

In 2022, following an increase in gasoline prices, Fleury "began using E85 regularly." (Dkt. 21 ¶ 45). Fleury had used E85 several times before without issue. (*Id.* at ¶ 47). Nonetheless, before using E85 regularly, Fleury "consulted the owners manual to see if there were any warnings or prohibitions about his intended use of E85." (*Id.* at ¶ 46). Yet, in early April 2022—following Fleury's regular use of E85—the check-engine light and a warning light displayed while he was driving his Impala in temperatures above 0 ºF. (*Id.* at ¶¶ 48–49). Then, the car "lost power, such that it could not be safely driven on public roads." (*Id.* at ¶ 48). Fleury brought his Impala to Advantage Chevrolet on April 5, 2022, where the service department found that the car had "low fuel pressure from [the] high pressure fuel pump," that the "high pressure fuel pump need[ed] to be replaced per bulletin #18-NA-072," and that the problems stemmed from Fleury's use of E85 fuel. (*Id.* at ¶ 50; Dkt. 21-12).[4] A service advisor at Advantage Chevrolet, Owen Suarez, also

---

[4] "Service Bulletin 18-NA-072 describes a fuel pump problem attributed to 'excessive use of E85, causing a plunger internal to the fuel pump to stick.'" (Dkt. 21 ¶ 53; Dkt. 21-13). According to the bulletin, dated March 2020, "the fuel tank should be filled with gasoline one-third or one-half of the time." (Dkt. 21 ¶ 54; Dkt. 21-13). Bulletin 18-NA-072 "replaced similar April 2018 and January 2019 Bulletins." (Dkt. 21 ¶ 55–56; Dkts. 21-15, 21-15). "Advantage

4

informed Fleury "that he should have been alternating fillups between E85 and gasoline, and that failing to do so caused the problems" with his Impala. (Dkt. 21 ¶ 51). Fleury alleges "GM knew of the fuel pump problem caused by 'excessive use' of E-85 since . . . early 2016." (Dkt. 21 ¶ 57).

On January 9, 2022, Fleury's 2016 Impala "failed the Illinois emissions test." (*Id.* ¶ 60; Dkt. 21-19). To pass the test, Fleury's car "would need a new mass air flow sensor" due to "the ongoing failure of the high pressure fuel pump." (Dkt. 21 ¶ 61–62). Advantage Chevrolet required Fleury to pay for the diagnosis and repairs of his car. (*Id.* ¶ 63). GM later offered to fix the fuel pump after Fleury complained to the Better Business Bureau. (*Id.* ¶ 64). Yet, fixing the fuel pump would not allow Fleury to operate his car using only E85 without risking damage. (*Id.* ¶¶ 65–66).

Fleury filed this lawsuit on July 26, 2022 (Dkt. 1) and amended his complaint on September 20, 2022. (Dkt. 21). Seeking to represent a class of GM Flex Fuel vehicle owners with Illinois addresses, Fleury brings three claims against GM.[5] First, Fleury alleges a violation of the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/2. (Dkt. 21 ¶¶ 76–96). Second, Fleury alleges common-law fraud. (*Id.* at ¶¶ 97–117). Third, Fleury alleges breach of express warranty. (*Id.* at ¶¶ 118–33). On November 21, 2022, GM moved to dismiss Fleury's amended complaint for failure to state a claim. (Dkt. 40).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory,*

---

Chevrolet received the service bulletins when they were issued." (Dkt. 21 ¶ 57). Further, GM's service bulletins "are numerous, are intended for GM and dealer service personnel, and often state that they are not for do-it-yourselfers." (*Id.* at ¶ 58).
[5] Fleury has voluntarily dismissed his claims against American Chevrolet. (Dkt. 43 at 9).

*LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pled factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

In addition, for claims "rest[ing] on allegations of deceptive conduct," Federal Rule of Civil Procedure 9(b) requires the plaintiff to "plead with particularity the circumstances constituting fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)); Fed. R. Civ. P. 9(b). This means the plaintiff "must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson*, 944 F.3d at 646 (quoting *Vanzant*, 934 F.3d at 738).

## DISCUSSION

### I. Illinois Consumer Fraud Act (Count I)

Fleury claims that GM's failure to disclose that Flex Fuel vehicles cannot run exclusively on E85 was deceptive and unfair, in violation of the ICFA, 815 ILCS 505/2. (Dkt. 21 ¶ 78). To plead an ICFA claim, a plaintiff must allege: "(1) "that the defendant committed a deceptive or unfair act"; (2) "with the intent that others rely on the deception"; (3) that the act occurred in the course of trade or commerce"; and (4) actual damages; (5) proximately caused by the deception.

6

*Benson*, 944 F.3d at 646 (quoting *Vanzant*, 934 F.3d at 736); *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 10 (Ill. 2008). The statute permits claims of "either deceptive conduct or unfair conduct (or both)." *Benson*, 944 F.3d at 646 (citing *Vanzant*, 934 F.3d at 738). Rule 9(b)'s heightened pleading standard applies to deceptive-conduct claims—but not claims of unfair conduct. *Id.*

### A. Deceptive Conduct

Deceptive conduct under the ICFA "creates a likelihood of deception or has the capacity to deceive." *Id.* (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). To determine the likelihood of deception, "[c]ourts apply a 'reasonable consumer' standard," and consider "the totality of the information made available to the plaintiff." *Id.* (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015), and *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)).

Fleury points to several allegedly "false and misleading" statements in the GM owner's manual—that "[v]ehicles with a yellow fuel cap can use either unleaded gasoline or [E85]," that using "E85 or FlexFuel is encouraged when the vehicle is designed to use it," that consumers can locate E85 fuel stations on the Department of Energy's alternative fuel website, that E85 is not suitable for use in temperatures below 0 ºF, and that using E85 requires more frequent fill-ups because E85 "has less energy per liter (gallon) than gasoline." (Dkt. 21 ¶¶ 37–38, 82–83). Fleury claims these statements encourage the use of E85 to an extent that "causes Flex Fuel vehicles to come to grief." (Dkt. 47 at 7). Yet, Fleury fails to identify a false or deceptive statement. He does not contend that his Flex Fuel vehicle cannot use E85. (*See* Dkt. 21 ¶ 47). Stating that Flex Fuel vehicles can run on E85—and even encouraging such use—does not contradict the truth that using

7

E85 *exclusively* may cause damage. Moreover, Fleury does not allege that he read the owner's manual before buying his 2016 Impala.

In fact, the only representations Fleury allegedly relied on before purchasing his car were the "E85" window sticker and an online advertisement stating that the Impala had "E85 FlexFuel capability." (*See id.* at ¶¶ 22–23). Neither of these representations were false or deceptive. Rather, Fleury admits that he used E85 several times without issue. (*Id.* at ¶ 47). And Fleury does not allege that he relied on any statements suggesting that the 2016 Impala could run solely on E85. Further, GM's representations to the public about the meaning of "Flex Fuel" are irrelevant absent any allegation that Fleury relied on those representations. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (explaining that the ICFA "plaintiff must actually be deceived by a statement or omission . . . . If a consumer has neither seen nor heard any such statement, then [he] cannot have relied on the statement and, consequently, cannot prove proximate cause."). Fleury has therefore failed to plead with particularity that he relied on an affirmative false or deceptive statement.

Alternatively, Fleury contends that GM omitted a material fact—specifically, "[t]he fact that continuous use of E85 may cause sudden loss of power or severe damage" to a Flex Fuel vehicle. (Dkt. 21 ¶ 79). Omitting or concealing a material fact is deceptive conduct. *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (Ill. App. Ct. 2001). "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision [regarding] whether to purchase the product." *Id.* (quoting *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 866 (Ill. 1997)); *accord Toulon v. Cont'l Casualty Co.*, 877 F.3d 725, 740 (7th Cir. 2017). To be actionable, however, an "omission" must be "an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept.

8

1, 2017); *De Bouse*, 922 N.E.2d at 316 ("If there has been no communication with the plaintiff, there have been no statements and no omissions.").

Fleury's ICFA omission claim fails, too, because he has not connected the dots between the purported omission and a particular communication by GM which he relied on. Again, Fleury alleges he received only two pre-purchase communications from GM: (1) GM's placement of an "E85" sticker on the 2016 Impala window; and (2) GM's provision of the car's specifications—including its "E85 FlexFuel capability—to Advantage Chevrolet, which the dealership then advertised. Neither of these representations were deceptive by omission. Fleury does not allege that his Impala lacked "E85 FlexFuel capability." Thus, Fleury has failed to plead with particularity that GM made any deceptive omission.

### B. Unfair Conduct

Fleury claims that GM's nondisclosure of the fact that Flex Fuel vehicles cannot run exclusively on E85 without risking sudden failure offends public policy, is "unscrupulous and unethical," and "presents a safety hazard." (Dkt. 21 ¶¶ 84–88; Dkt. 47 at 9–10). To the extent Fleury rehashes his deceptive-conduct argument, he cannot avoid Rule 9(b)'s heightened pleading standard by substituting the word "unfairness" for "misrepresentation." *See Camasta v. Jos. A. Bank. Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (applying Rule 9(b) where "allegations of 'unfair practice' are clearly premised upon the primary claim that [the defendant] utilized a fraudulent sales technique"). Since Fleury's unfairness claim depends on an alleged failure to disclose a defect—and accordingly, sounds in fraud—Rule 9(b) applies. Nonetheless, Fleury's unfairness claim would fail under either pleading standard.

To determine whether conduct is unfair under the ICFA, courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous;

9

[and] (3) whether it causes substantial injury to consumers." *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). A plaintiff need not meet all three factors: rather, "[a] practice might be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Robinson*, 775 N.E.2d at 961). Fleury's allegations meet none of the criteria.

First, conduct "offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise." *Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940–41 (7th Cir. 2021) (citing *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (1990)). In support of the proposition that selling "known defective products is an unfair practice," Fleury offers a string of cases applying out-of-state consumer fraud laws. (Dkt. 47 at 9–10). Fleury argues further that exposing consumers to an "unknown" and "unavoidable risk of harm" is unfair, citing *Bartnett v. Abbott Laboratories*, 492 F. Supp. 3d 787, 801 (N.D. Ill. Oct. 2, 2020), which analyzed a claim that the defendant failed to adequately protect the plaintiff's personal information from theft. (Dkt. 47 at 10).

Even accepting the premise that selling defective products generally offends public policy, Fleury fails to adequately allege that the inability of Flex Fuel cars to use only E85 is a defect. Fleury does not point to any statement by GM that Flex Fuel vehicles can run exclusively on E85. Contrary to Fleury's assertion, the fact that exclusive use of E85 can damage Flex Fuel vehicles appears knowable, and the risk of harm, avoidable. The owner's manual alerts users to the potential problem.[6] Further, GM's service bulletin provides a mechanism for authorized dealers to warn

---

[6] In deciding this motion to dismiss, it is appropriate to consider the 2016 Impala owner's manual since it is excerpted throughout Fleury's complaint and "central to his claim." *See Simpson v. Brown County*, 860 F.3d 1001, 1004 n.1 (7th Cir. 2017). The owner's manual instructs that E85 fuel which does not meet certain specifications "can affect driveability and could cause the malfunction of the indicator lamp to come on." (Dkt. 21 ¶ 37e; Dkt. 21-8). Further, if the malfunction light turns on, the manual instructs to "change the fuel brand" for "at least one full tank." Chevrolet, 2016 Impala Owner's Manual 120–21 (2016), available at https://www.chevrolet.com/bypass/pcf/gma-content-api/resources/sites/GMA/content/staging/MANUALS/3000/MA3014/en_US/2.0/2k16impala2ndPrint.pdf. If the

Flex Fuel drivers against excessive E85 use—as occurred here when Fleury experienced car trouble. In short, public policy does not require GM's vehicles to live up to Fleury's subjective expectations. Fleury has not sufficiently alleged that GM violated any Illinois public policy.

Second, a business practice is immoral, unethical, oppressive, or unscrupulous if it gives the consumer "little choice but to submit to it." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002–03 (7th Cir. 2018) (quoting *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 610 (7th Cir. 2013)). Fleury does not contend a lack of choice in this situation. Nor could he. Before buying the 2016 Impala, he could have asked questions about the meaning of Flex Fuel capability. Now, he can avoid damaging the car by alternating between filling up with E85 and gasoline. Or he can sell the car. Thus, Fleury has failed to allege an immoral, unethical, oppressive, or unscrupulous practice.

Third, Fleury has failed to allege a substantial injury. This factor asks whether the plaintiff's "injury is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 834 (7th Cir. 2014). Even assuming that the damage to Fleury's car—which GM offered to fix—and his inability to use only E85 constitute a substantial injury without countervailing benefits, Fleury's injury was avoidable. Again, he could have asked the dealer about the meaning of Flex Fuel capability before running his car exclusively on E85. This brings the Court back to the question of whether GM's conduct was oppressive. *See Batson*, 746 F.3d at 834. It is not. On balance, therefore, Fleury has failed to allege unfair conduct.

\*    \*    \*

---

light stays on, the manual warns, the owner should "seek[] service promptly" to "prevent damage" and "costly repairs." 2016 Impala Owner's Manual, at 121.

Since Fleury has not sufficiently alleged any deceptive or unfair conduct, he has failed to state an ICFA claim.

## II. Common-Law Fraud (Count II)

Fleury contends that GM committed fraud by making false and misleading statements and omissions about the use of E85 with Flex Fuel vehicles. (Dkt. 21 ¶¶ 99–109). To state a claim for fraud under Illinois law, Fleury must plead the following elements with particularity: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (quoting *Connick v. Suzuki Motor Co.*, 674 N.E.2d 584, 591 (1996)).

Fleury's fraud claim, like his ICFA claim, fails. As explained above, Fleury has not alleged with particularity that GM made any false representations on which Fleury relied in buying his 2016 Impala. The "E85" window sticker and the statement that the 2016 Impala has Flex Fuel capability are not false or deceptive representations. And Fleury did not rely on any statements in the owner's manual in buying the car.

Then, to state a claim for fraudulent concealment, Fleury must allege that GM concealed a material fact when under a duty to disclose that fact to him. *Squires-Cannon*, 897 F.3d 797 at 805 (citing *Connick*, 675 N.E.2d at 593). "The duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff.'" *Id.* (quoting *Connick*, 675 N.E.2d at 593). "[T]he standard for identifying a special trust relationship is extremely similar to that of a fiduciary

12

relationship." *Id.* at 806 (quoting *Toulon*, 877 F.3d at 738); *see also Wigod v. Wells Fargo Bank*, 673 F.3d 547, 571 (7th Cir. 2012) ("[S]tate and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one.").

Fleury's allegations do not suggest a fiduciary or special relationship between GM and the putative class. The Court agrees with the reasoning in *Rodriguez v. Ford Motor Co.*, that a car manufacturer's knowledge of its vehicles' parts and function does not establish an "overwhelming influence" over the consumer. 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022) (citing *Wigod*, 673 F.3d at 571). Without a duty to disclose, Fleury cannot sufficiently allege fraudulent concealment. Accordingly, Fleury's fraud claim fails.

### III. Breach of Express Warranty (Count III)

On the face of Fleury's complaint, his breach of express warranty claim against GM is time-barred.[7] A four-year statute of limitations governs breach of express warranty claims. *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, 902 F.3d 715, 718 (7th Cir. 2018) (citing 810 ILCS 5/2-725(1)). A breach of warranty claim accrues "when tender of delivery is made," unless the "warranty explicitly extends to future performance of the goods." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 305 (7th Cir. 2018) (quoting 810 ILCS 5/2-725(2)). "If the seller delivers nonconforming goods, the warranty is breached at that time . . . [e]ven if the buyer is unaware that the goods, as delivered," are nonconforming. *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007) (holding that a repair-and-replace warranty is not an express warranty and is therefore "not subject to the tender-of-delivery rule"); *see also Kesse v. Ford Motor Co.*, 2020 WL 832363, at *1, 11 (N.D. Ill. Feb. 20, 2020) (finding that the statute of limitations

---

[7] "[A] motion to dismiss for failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019) (quoting *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014)). Fleury's complaint meets that criteria.

13

for a breach of express warranty claim against a manufacturer accrued on the date of the car's delivery to its first owner).

The delivery of Fleury's 2016 Impala to its first private owner occurred on June 3, 2016.[8] Fleury does not contend that GM's warranty explicitly extends to future performance. Instead, Fleury argues that the statute of limitations did not begin to run until the car's delivery to him—rather than to the car's first purchaser. (Dkt. 47 at 11–12). Fleury relies on *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66 (Ill. App. Ct. 2001), which is inapposite. There, the statute of limitations began to run against a car dealer—rather than the manufacturer—when the dealer delivered the car to the plaintiff. *Id.* at 75.[9] Here, measuring accrual for a claim against the manufacturer from the date of the vehicle's first delivery would not "deny a subsequent purchaser of a car the same four-year period of limitations accorded to the purchaser of the car when new." *See Lipinski*, 759 N.E.2d at 75. Rather, Fleury's claim against the dealer would remain timely for four years after the dealer's delivery to the him.

Moreover, accepting Fleury's interpretation would result in an indefinite statute of limitations for manufacturers that renews each time a vehicle changes hands. *E.g.*, *Heller v. U.S. Suzuki Motor Corp.*, 477 N.E.2d 434, 436 (N.Y. 1985) (interpreting a similar statute of limitations under New York law). That would be a strange result. Fleury's breach of express warranty claim against GM accrued on the date of the Impala's delivery to its first owner in June 2016—more than four years before Fleury filed this lawsuit in July 2022. Accordingly, Fleury's claim is untimely and must be dismissed.

---

[8] Although the in-service date of Fleury's Impala appears in an exhibit attached to Fleury's complaint, (Dkt. 21-12), on a motion to dismiss, the Court is "free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'"—including exhibits to the complaint. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992), and citing Fed. R. Civ. P. 10(c)).
[9] The statute Fleury cites also applies to vehicle dealers, not manufacturers. 815 ILCS 505/2L(a).

## **CONCLUSION**

For the reasons above, GM's motion to dismiss [40] is granted. Counts I – III are dismissed without prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: February 1, 2023