THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FLEURY, individually and on behalf of a class, | ) ) ) |
| *Plaintiff*, | ) No. 22 C 03862 ) |
| v. | ) Judge Virginia M. Kendall ) |
| GENERAL MOTORS LLC, | ) ) |
| *Defendant*. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Fleury's 2016 Chevrolet Impala Flex Fuel broke down after he ran the car exclusively on E85 (85% ethanol). Fleury claims General Motors LLC (GM) failed to disclose the dangers of excessive E85 use to consumers. After this Court dismissed Fleury's Amended Complaint for failure to state a claim, (Dkt. 56), Fleury filed a Second Amended Complaint. (Dkt. 57). Again, GM moves for dismissal. (Dkt. 58). For the reasons below, GM's motion is granted in part and denied in part. (*Id.*)

**BACKGROUND**

The Court assumes familiarity with the facts of this case from its prior Opinion. *Fleury v. Gen. Motors LLC*, 2023 WL 1450284 (N.D. Ill. Feb. 1, 2023). In short, Fleury bought a used 2016 Chevrolet Impala Flex Fuel from an authorized GM dealer in 2019. (Dkt. 57 ¶ 12). He wanted a Flex Fuel car because it can use E85 in addition to gasoline, allowing fuel savings. (*Id.* at ¶¶ 13–14, 18). Before buying the Impala, Fleury saw and relied on an "E85" window sticker above the fuel filler. (*Id.* at ¶ 20). Fleury also saw and relied on an online advertisement, which stated that the car's engine "[i]ncludes E85 FlexFuel capability." (*Id.* at ¶¶ 28–29; Dkt. 57-4 at 4).

1

Fleury points to several other of GM's representations—none of which he claims to have relied on in purchasing the car. Fleury's Impala had a "corn yellow" fuel-filler cap, indicating that it was a Flex Fuel vehicle. (Dkt. 57 ¶ 21). The fuel-filler cap stated: "E85 / Gasoline . . . Do not use additives with E85 Fuel." (*Id.* at ¶¶ 22, 52; Dkt. 57-3). GM had "create[d] public understanding and secondary meaning" for the term "Flex Fuel." (Dkt. 57 ¶ 30). For example, GM represented that Flex Fuel vehicles "run on E85 ethanol, gasoline, or any combination of the two." (*Id.* at ¶¶ 31–32; Dkt. 57-5). Similar statements appeared in GM's annual reports on SEC Form 10-K for 2017 through 2021. (Dkt. 57 ¶ 34).

At the time of purchase, Fleury received a copy of the 2016 Impala owner's manual. (*Id.* at ¶¶ 36–40; Dkts. 57-6, 57-7). He bought the car with the belief that the owner's manual included accurate instructions and warnings to use and maintain the car. (Dkt. 57 ¶¶ 41–46, 48–49). Fleury asserts his belief stemmed from GM's intention that consumers rely on the owner's manual for accurate information about the car. (*Id.* at ¶¶ 40–43). Similarly, Fleury alleges he "relied on . . . [t]he fact that an accurate manual for the vehicle existed and was being provided, prior to purchase." (*Id.* at ¶ 49). Fleury read the owner's manual later, "whenever he had a question about the vehicle's features, operation or care." (*Id.* at ¶ 47). The owner's manual included the following statements:

- "Vehicles with a yellow fuel cap can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85). . . . For all other vehicles, use only . . . unleaded gasoline . . . ." (Dkt. 57 ¶ 50a; Dkt. 57-6 at 27).

- "If the vehicle has a yellow fuel cap, E85 or FlexFuel can be used in the vehicle." (Dkt. 57 ¶ 50b; Dkt. 57-7 at 238).

- "Vehicles with a yellow fuel cap can use either unleaded gasoline or fuel containing up to 85% ethanol (E85). All other vehicles should use only . . . unleaded gasoline . . . ." (Dkt. 57 ¶ 50c; Dkt. 57-7 at 240).

- "The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it. E85 or FlexFuel is made from renewable resources. To help locate fuel stations that carry E85 or FlexFuel, the U.S. Department of Energy has an alternative fuel website." (Dkt. 57 ¶ 50d; Dkt. 57-7 at 240).

- "If the vehicle has E85 fuel capability, the fuel cap will be yellow and state that E85 or gasoline can be used." (Dkt. 57 ¶ 50e; Dkt. 57-7 at 241).

- "The starting characteristics of E85 or FlexFuel make it unsuitable for use when temperatures fall below -18 ºC (0 ºF). Use gasoline or add gasoline to the E85 or FlexFuel." (Dkt. 57 ¶ 51a; Dkt. 57-7 at 240).

- "Because E85 or FlexFuel has less energy per liter (gallon) than gasoline, the vehicle will need to be refilled more often." (Dkt. 57 ¶ 51b; Dkt. 57-7 at 240).

- "E85 or FlexFuel should meet ASTM Specification D 5798 or CAN/CGSB-3.512 in Canada. Do not use the fuel if the ethanol content is greater than 85%. Fuel mixtures that do not meet ASTM or CGSB specifications can affect driveability and could cause the malfunction indicator lamp to come on." (Dkt. 57 ¶ 51c; Dkt. 57-7 at 240).

Purchasers of Flex Fuel vehicles did not receive any warning to "alternat[e] E85 with gasoline . . . every other tank or every third tank to prevent damage." (Dkt. 57 ¶ 53). GM has further stated to the public:

> Initiatives to expand the infrastructure for flex-fuel vehicles are extremely important, . . . and . . . additional pumps need to be put where the vehicles are located. While the largest concentrations of flex-fuel vehicles are found in the highest-population areas, two thirds of the current E85 stations, are in 10 Midwestern states. Ninety percent of registered flex-fuel vehicles don't have an E85 station in their zip code, and nearly 50%, don't have E85 in their county . . . .

(*Id.* at ¶ 60; Dkt. 57-8).

Fleury drove his Impala for a few years without issue, occasionally refilling with E85. (Dkt. 57 ¶¶ 67, 73). In 2022, after consulting with the owner's manual, Fleury ditched gas in favor of additive-free E85. (*Id.* at ¶¶ 65, 68). Then, the car's check-engine and warning lights turned on, and the car lost power. (*Id.* at ¶ 69). At the GM dealer, Fleury learned that his exclusive use of E85 had caused the fuel pump to fail, requiring its replacement. (*Id.* at ¶¶ 72–73). A service advisor

told Fleury his car required alternating between E85 and gas to avoid problems with the fuel pump. (*Id.* at ¶¶ 73–75). GM has known since 2016 that excessive E85 use causes fuel-pump issues in Flex Fuel vehicles. (*Id.* at ¶¶ 77–84).

On January 9, 2022, Fleury's Impala "failed the Illinois emissions test." (*Id.* at ¶ 85; Dkt. 57-21). His car's mass air flow sensor requires replacement due to the fuel-pump failure. (Dkt. 57 ¶ 87). Although the authorized dealer asked Fleury to pay for the car's diagnosis and repairs, GM later offered to fix the fuel pump. (*Id.* at ¶¶ 88–89). Yet, even after the fuel-pump repair, Fleury will risk damaging his car again if he uses only E85. (*Id.* at ¶¶ 90–91). If Fleury had known about the problem with excessive E85 use, he would not have bought a Flex Fuel vehicle or "would not have paid as much for it." (*Id.* at ¶ 99). And if Fleury had received instructions to alternate between E85 and gas, he would have done so. (*Id.* at ¶ 100).

Fleury filed this action on July 26, 2022 (Dkt. 1) and amended his complaint on September 20, 2022. (Dkt. 21). Following the dismissal of the Amended Complaint on February 1, 2023, (Dkt. 56), Fleury filed a Second Amended Complaint on February 20, 2023. (Dkt. 57). Seeking to represent a class of GM Flex Fuel vehicle owners in Illinois, Fleury claims GM violated the Illinois Consumer Fraud Act (ICFA) through deceptive conduct (Count I) and unfair conduct (Count II); and committed common-law fraud (Count III). (Dkt. 57 ¶¶ 104–52).[1] On March 1, 2023, GM moved to dismiss Fleury's Second Amended Complaint for failure to state a claim. (Dkt. 58).

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff

---

[1] Fleury's previous complaint included a breach-of-express-warranty claim, which the Court dismissed as untimely. *Fleury*, 2023 WL 1450284, at *7–8.

4

must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

For claims "rest[ing] on allegations of deceptive conduct," Federal Rule of Civil Procedure 9(b) requires the plaintiff to "plead with particularity the circumstances constituting fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)); Fed. R. Civ. P. 9(b). This means the plaintiff "must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson*, 944 F.3d at 646 (quoting *Vanzant*, 934 F.3d at 738).

## **DISCUSSION**

### I.  **Law of the Case**

Initially, GM argues that the law-of-the-case doctrine bars consideration of Fleury's repleaded claims. (Dkt. 58-1 at 4). The Court disagrees. Promoting "consistency, finality, and judicial economy," the law-of-the-case doctrine "presumes that once a court has decided a

particular issue in a case, the issue should not be reopened without good cause." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 710–11 (7th Cir. 2016); *see also Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). As a prudential doctrine, its application is discretionary: the presumption "does not prohibit a court from revisiting an issue when there is a legitimate reason to do so, whether it be a change in circumstances, new evidence, or something the court overlooked earlier." *Boyer*, 824 F.3d at 711. When considering the law-of-the-case doctrine, "it is critical to determine what issues were actually decided in order to define what is the 'law' of the case." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982); *see also, e.g.*, *Taylor v. Docherty*, 2018 WL 2299237, at *2–3 (N.D. Ill. May 21, 2018) (previous dismissal for failure to state a claim did not bar consideration of the repleaded claim with additional allegations).

In an earlier opinion, the Court held that Fleury's previous complaint—including many of the allegations repeated in the Second Amended Complaint—did not state a claim for an ICFA violation or common-law fraud. *Fleury*, 2023 WL 1450284, at *3–7. As to the ICFA claim, the Court reasoned that Fleury had not identified an affirmative false or deceptive statement that he relied on in purchasing his 2016 Impala. *Id.* at *4. Nor had Fleury connected an alleged fraudulent omission to a particular pre-purchase communication. *Id.* at *5. Fleury's allegations also fell short of raising a plausible inference that GM's failure to disclose the risks of running Flex Fuel vehicles exclusively on E85 amounted to unfair conduct under the ICFA. *Id.* at *5–6. Then, Fleury's common-law fraud claim failed because he had not alleged reliance on a false statement of material fact. *Id.* at *6. Fleury's allegations likewise failed to suggest a fiduciary or special relationship imposing a duty on GM to disclose that Flex Fuel vehicles cannot run solely on E85. *Id.* at *6–7.

Building on the previous pleading, Fleury's Second Amended Complaint alleges that his car's fuel-filler cap stated, "E85 / Gasoline . . . Do not use additives with E85 Fuel," and that he

6

used additive-free E85. (Dkt. 57 ¶¶ 22, 68). And he brings new allegations concerning his pre-purchase understanding that the owner's manual included accurate instructions and warnings. (*Id.* at ¶¶ 41–46, 48–49). Fleury also raises new arguments to oppose GM's present motion to dismiss. Defending his ICFA deception and common-law fraudulent-concealment claims, he asserts a theory of post-purchase reliance on the owner's manual, which he claims was deceptive by half-truth. (Dkt. 61 at 8–11). As to his ICFA unfairness claim, Fleury cites new authority to argue that unsafe vehicles offend Illinois public policy. (*Id.* at 12).

Fleury's repleaded claims are not identical to those which the Court dismissed. So the Court need not depart from its prior ruling to consider the merits. *See, e.g.*, *Taylor*, 2018 WL 2299237, at *3; *Aleman v. Dart*, 2010 WL 4876720, at *3 (N.D. Ill. Nov. 23, 2010) ("Several differences exist between the amended complaint and the second amended complaint that prevent this Court from applying the 'law of the case' doctrine to the operative complaint."). Put differently, the Court has not yet ruled on Fleury's claims as he now presents them. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009) ("[T]he case changed . . . and the district court was free to take a new look at it."); *see also Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988) ("As a general rule, the [law-of-the-case] doctrine does not extend to issues not presented or decided . . . ."). Moreover, Fleury's present complaint supersedes the previous complaint, rendering it void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Thus, the law of the case does not bar the Court's review.

## II.     Illinois Consumer Fraud Act (Counts I & II)

In Counts I and II, Fleury claims GM's failure to disclose that Flex Fuel vehicles cannot run exclusively on E85 was deceptive and unfair, in violation of the ICFA, 815 ILCS 505/2. (Dkt. 57 ¶¶ 105–35). To plead an ICFA claim, a plaintiff must allege: "(1) "that the defendant committed

7

a deceptive or unfair act"; (2) "with the intent that others rely on the deception"; (3) that the act occurred in the course of trade or commerce"; and (4) actual damages; (5) proximately caused by the deception. *Benson*, 944 F.3d at 646 (quoting *Vanzant*, 934 F.3d at 736); *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 10 (Ill. 2008). The statute permits claims of "either deceptive conduct or unfair conduct (or both)." *Benson*, 944 F.3d at 646 (citing *Vanzant*, 934 F.3d at 738).

### A. Deceptive Conduct (Count I)

Deceptive conduct under the ICFA "creates a likelihood of deception or has the capacity to deceive." *Id.* (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). To determine the likelihood of deception, "[c]ourts apply a 'reasonable consumer' standard," and consider "the totality of the information made available to the plaintiff." *Id.* (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015), and *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)). Opposing dismissal, Fleury argues: (1) language on his car's fuel-filler cap was deceptive; (2) he relied on his own belief that the owner's manual was accurate and complete; and (3) he relied on the owner's manual in damaging his car after buying it. The third argument nudges Fleury's repleaded claim to the next stage.

First, Fleury argues that the language on the 2016 Impala's fuel-filler cap—"E85 / Gasoline . . . Do not use additives with E85 Fuel"—implies that avoiding additives is the only restriction on using E85. (*See* Dkt. 57 ¶¶ 22–23). This new allegation does not add much to those he repeats from the previous complaint.[2] In sum, GM: (1) represented that the 2016 Impala Flex

---

[2] GM publicly stated that Flex Fuel vehicles "run on E85 ethanol, gasoline, or any combination of the two." (Dkt. 57 ¶¶ 31–32, 34). GM also stated that expanding access to E85 for Flex Fuel vehicles is "extremely important." (*Id.* at ¶ 60). Statements in the 2016 Impala Flex Fuel owner's manual included: (1) Flex Fuel vehicles "can use either unleaded gasoline or [E85]," while "other vehicles should use only . . . unleaded gasoline"; (2) "E85 or FlexFuel can be used" in Flex Fuel vehicles; (3) using "E85 or FlexFuel is encouraged when the vehicle is designed to use it"; and (4) "E85 or gasoline can be used" in vehicles with "E85 fuel capability." (*Id.* at ¶ 50). The manual also warned that E85 "has less energy per liter (gallon) than gasoline," that E85 is "unsuitable for use" in low temperatures, and that

Fuel could run on E85; (2) encouraged the use of E85; and (3) provided certain warnings about E85 use. Since these statements do not contradict the truth that exclusive E85 use risks damage, *Fleury*, 2023 WL 1450284, at *4, a deception-by-omission theory presents the only plausible way forward for Fleury's claim.

The bigger problem with Fleury's claim is proximate cause. GM's representations about Flex Fuel vehicles only matter if Fleury relied on those representations and suffered damage as a result. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (explaining that the ICFA "plaintiff must actually be deceived by a statement or omission . . . . If a consumer has neither seen nor heard any such statement, then [he] cannot have relied on the statement and, consequently, cannot prove proximate cause."). As in the previous complaint, Fleury only points to two statements he relied on in buying his car: (1) an "E85" window sticker; and (2) an online advertisement touting the engine's "E85 FlexFuel capability." (Dkt. 57 ¶¶ 20, 28–29). Neither statement was false or deceptive. *Fleury*, 2023 WL 1450284, at *4. Although Fleury read the owner's manual, he did so *after* buying his car.

Second, Fleury alleges he bought the car believing that the owner's manual contained accurate instructions and warnings. (Dkt. 57 ¶¶ 41–46, 48–49). Fleury claims to have "relied on . . . [t]he fact that an accurate manual for the vehicle existed and was being provided, prior to purchase." (*Id.* at ¶ 49). Whatever GM intended for consumers to expect from the owner's manual, Fleury does not point to any representations by GM about the manual. Assuming the owner's manual was deceptively incomplete, he fails to plead with particularity that GM misrepresented the manual's accuracy or completeness. *Cf. De Bouse*, 922 N.E.2d at 317–18 (holding that "the mere selling of a product" is not an actionable representation under the ICFA).

---

using E85 which does not meet certain specifications "can affect driveability and could cause the malfunction indicator lamp to come on." (*Id.* at ¶ 51).

9

Moreover, GM's alleged omission of information about the owner's manual is only actionable if it was "an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017); *De Bouse*, 922 N.E.2d at 316 ("If there has been no communication with the plaintiff, there have been no statements and no omissions."). It would strain credulity to infer that GM omitted information about the owner's manual from the "E85" window sticker or the "E85 FlexFuel capability" advertisement. Nor would these communications actually deceive a reasonable consumer into drawing mistaken conclusions about the contents of the owner's manual. *See De Bouse*, 922 N.E.2d at 316.

Fleury's third argument is his strongest. He claims that—after buying his Impala—he relied on the absence of an excessive-E85-use warning in the owner's manual and suffered damage to his fuel pump as a result. (Dkt. 61 at 8–11; Dkt. 65 at 2–3). Omitting or concealing a material fact is deceptive conduct. *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (Ill. App. Ct. 2001). A fact is material if the "buyer would have acted differently knowing the information." *Id.* (quoting *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 866 (Ill. App. Ct. 1997)); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017). GM's statements in the owner's manual included that "E85 or FlexFuel can be used" in Flex Fuel vehicles, and that using "E85 or FlexFuel is encouraged when the vehicle is designed to use it." (Dkt. 57 ¶ 50). Despite providing other warnings about E85 use, the manual failed to disclose that consistent E85 use risks damaging the fuel pump. Drawing inferences in Fleury's favor, the omission could plausibly mislead a reasonable consumer into using too much E85 and damaging their car. Fleury's repleaded ICFA deception claim therefore succeeds where the previous complaint failed—by connecting an omission to a specific communication and showing proximate cause.

Countering Fleury's post-purchase reliance theory, GM points out that the ICFA reaches only deceptive acts which "occurred in the course of trade or commerce." *Benson*, 944 F.3d at 646 (quoting *Vanzant*, 934 F.3d at 736); (Dkt. 62 at 7 & n.5). "Trade" and "commerce" include "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated." *Kim v. State Farm Mut. Auto. Ins. Co.*, 199 N.E.3d 737, 751 (Ill. App. Ct. 2021) (quoting 815 ILCS 505/1(f)); *People ex. Rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 64 (Ill. 1991) ("The definition of 'trade' and 'commerce' in the Act includes the 'distribution of *any* services . . . directly or indirectly affecting the people of this State*.*" (quoting 815 ILCS 505/1(f))); *see also Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (observing that the ICFA "is liberally construed" to "protect consumers from unfair methods of competition and other unfair and deceptive business practices" (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002))). Even ICFA claims by non-consumers can survive where "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Kim*, 199 N.E.3d at 752 (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 44 (Ill. 1989)); *see also Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 221 (Ill. 2003).

GM's alleged conduct plausibly falls within the ICFA's sweeping definition of "trade or commerce." *Cf. Mosier v. Village of Holiday Hills*, 128 N.E.3d 1210, 1217–18 (Ill. App. Ct. 2019) (defendant did not engage in "trade or commerce" by issuing building permits); *G & G Closed Cir. Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1134 (N.D. Ill. 2018) (collecting cases and holding that litigation conduct is not "trade or commerce"). The ICFA can reach post-sale deception. *See Daley*, 585 N.E.2d at 64–65 (holding debt collection constitutes "trade or

11

commerce" under the ICFA). GM distributed the owner's manual to consumers of Flex Fuel vehicles—an act it committed in the course of selling the vehicles. *See Kim*, 199 N.E.3d at 752. At a minimum, GM's distribution of the owner's manual addressed the market of Flex Fuel vehicle consumers. *See id.* Circulating a deceptively incomplete owner's manual also implicates consumer protection concerns. *See id.*

GM then argues Fleury suffered no actual harm from the omission of a warning against consistent E85 use. (Dkt. 58-1 at 8). But GM's rejected offer to fix Fleury's fuel pump does not preclude his claim for damages—especially since Fleury seeks punitive damages and attorneys' fees in addition to actual damages. *See, e.g.*, *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1161 (N.D. Ill. Feb. 4, 2022) (plaintiff pleaded an injury under the ICFA despite the availability of a refund in the amount of her actual damages). So Fleury's repleaded ICFA deception claim survives.

### B. Unfair Conduct (Count II)

Fleury next repleads his ICFA unfairness claim, insisting that GM's "marketing of vehicles containing an undisclosed safety hazard is contrary to public policy," and its "sale of Flex Fuel vehicles without warnings" about consistent E85 use "is unscrupulous and unethical." (Dkt. 57 ¶¶ 121–27). To determine whether conduct is unfair under the ICFA, courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). A plaintiff need not meet all three factors: rather, "[a] practice might be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Robinson*, 775 N.E.2d at 961). Notably, Rule 9(b) applies to Fleury's repleaded unfairness claim since it

depends on allegations that GM failed to disclose a defect, sounding in fraud. *See Camasta v. Jos. A. Bank. Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (applying Rule 9(b) where "allegations of 'unfair practice' are clearly premised upon the primary claim that [the defendant] utilized a fraudulent sales technique"). In ruling that Fleury's previous complaint failed to state an ICFA unfairness claim, the Court found that Fleury's allegations failed to satisfy any of the three factors indicating unfair conduct. *Fleury*, 2023 WL 1450284, at *5–6. Fleury urges the Court to reconsider.

Conduct "offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise." *Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940–41 (7th Cir. 2021) (citing *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (1990)). Fleury cites 625 ILCS 5/12-101(a), which prohibits the driving of an unsafe vehicle. (Dkt. 61 at 12).[3] And he asserts that Illinois common law imposes a duty on car manufacturers to "design a vehicle that is reasonably safe for the occupants." (Dkt. 61 at 12 (quoting *Rennert v. Great Dane LP*, 543 F.3d 914, 916 (7th Cir. 2008)). Although unsafe vehicles offend Illinois public policy, Fleury's allegations fail to permit a plausible inference that Flex Fuel vehicles are unsafe. Consumers can avoid fuel-pump issues by consulting with an authorized dealer before using E85 consistently. Moreover, after Fleury used E85 excessively, his car's check-engine and warning lights turned on before his car broke down. (Dkt. 57 ¶ 69). Fleury does not allege any personal injury or property damage apart from his damaged fuel pump.

Even if the inability of Flex Fuel vehicles to run exclusively on E85 presented an unreasonable safety concern, the other two factors weigh against a finding of unfair conduct. Onto

---

[3] In pertinent part, the statute provides: "It is unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property." 625 ILCS 5/12-101(a).

the second factor, a business practice is immoral, unethical, oppressive, or unscrupulous if it gives the consumer "little choice but to submit to it." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002–03 (7th Cir. 2018) (quoting *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 610 (7th Cir. 2013)). Fleury argues "unfairness exists when a consumer has invested a substantial sum in a purchase and is then given the 'choice' of forfeiting what he has purchased or keeping something of lesser value than had it been as represented." (Dkt. 65 at 12). As explained, it is plausible that omissions from the owner's manual misled Fleury as to his car's capacity to run on E85—but only after he bought the car. Fleury does not allege he bought the car relying on any statements suggesting Flex Fuel vehicles can use E85 exclusively. So Fleury is not stuck with a car worth less than what GM represented to him before purchase. He can sell the car for its market value. If he keeps the car, Fleury can avoid further damage by alternating between E85 and gas.

Third, Fleury does not allege a substantial injury. This factor asks whether the plaintiff's "injury is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 834 (7th Cir. 2014). Fleury offers no new allegations or arguments on this factor. Again, he could have avoided damaging his car by consulting with an authorized dealer before switching to E85. Since the factors still weigh against a showing of unfair conduct, Fleury's ICFA unfairness claim fails.

### III. Common-Law Fraudulent Concealment (Count III)

Finally, Fleury reasserts his common-law fraudulent-concealment claim. (Dkt. 57 ¶¶ 136–52).[4] To state a claim for fraud under Illinois law, a plaintiff must plead the following elements

---

[4] Fleury's previous complaint pursued theories of affirmative fraud and fraudulent concealment. *Fleury*, 2023 WL 1450284, at *6–7. He now focuses on the latter theory, styled as a claim of "fraud by misleading statement or half-truth." (Dkt. 57 at 19).

14

with particularity: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (1996)).

In addition, a fraudulent-concealment claim must allege that the defendant concealed a material fact when under a duty to disclose that fact to the plaintiff. *Squires-Cannon*, 897 F.3d at 805 (citing *Connick*, 675 N.E.2d at 593); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Fleury previously failed to plead a duty to disclose under a fiduciary or special-relationship theory. *Fleury*, 2023 WL 1450284, at *7. Without a fiduciary relationship, "a duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009); *see also, e.g.*, *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 855 (N.D. Ill. 2021) ("A half-truth is a disclosure that is misleading because it omits important information." (citing *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 149 (N.D. Ill. 2005)).

Fleury's repleaded fraudulent-concealment claim survives on the same theory as his ICFA deceptive omission claim. *See Kim*, 199 N.E.3d at 747–48 (analyzing ICFA and common-law fraud claims together). Fleury points to GM's statements in the 2016 Impala owner's manual that Flex Fuel vehicles can use E85 and that E85 use is encouraged. (Dkt. 57 ¶ 50). The manual also warned about E85 specifications and E85 use in low temperatures. (*Id.* at ¶ 51). These representations plausibly give rise to a duty to disclose the "whole truth" that consistent E85 use can cause fuel-pump failure. *See Crichton*, 576 F.3d at 398. As explained, Fleury also alleges he

15

damaged his fuel pump in reliance on GM's omission of an appropriate warning against consistent E85 use in the owner's manual. Thus, Fleury has stated a claim for fraudulent concealment.

## CONCLUSION

For the reasons above, GM's motion to dismiss [58] is granted in part and denied in part. Count II is dismissed with prejudice. Fleury's ICFA deceptive omission claim in Count I and his fraudulent-concealment claim in Count III may move forward consistent with this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: June 2, 2023